MARY F. CAMPBELL ET AL. v. JULIA ANTIS ET AL.

Decided April 19, 1899.

**1. Trespass to Try Title—Special Pleading by Defendant.**

A cross-action for fraud alleging the way in which a certain title was procured, as matter of inducement, is not a special plea of title, and does not affect the plea of not guilty previously interposed in an action of trespass to try title.

**2. Evidence—Copy of Partition Decree.**

Evidence of a judgment or decree awarding each party one-half of certain land, recorded before the commissioners appointed to partition the land had reported, is admissible in evidence under the statute as "a judgment or decree by which the title to land is recovered." Rev. Stats., art. 4649.

**3. Same—Notice of Adverse Title—Innocent Purchaser.**

Evidence that a party, at the time land was conveyed to him, had notice of another's title is admissible, although he has parted with it, for the purpose of showing that he was not a purchaser without notice, and that therefore his grantee can not claim a good title by reason of the grantor's want of notice.

**4. Execution Sale—Levy on Community Land.**

A judgment creditor may, under levy of his execution upon only the interest of the husband in community land, procure a valid sale of such interest, although the other half interest was also liable.

APPEAL from Bexar. Tried below before Hon. J. L. CAMP.

*W. W. King,* for appellants.

*Otto Staffel* and *Dibrell & Mosheim,* for appellees.

FLY, ASSOCIATE JUSTICE.—Mary F. Campbell, joined by her husband, Thomas Campbell, instituted this action to try title to the east half of a six acres tract of land out of a survey originally granted to Samuel McKinney. Appellees filed a plea of not guilty, and further pleaded that they were married on July 4, 1893; that previous to that time Julia Antis had been Julia Haeberle; that on May 6, 1893, she had obtained a divorce from Albert Haeberle, then her husband, and had at the same time recovered from him a judgment for an undivided one-half interest in six acres of land, and all costs of suit; that commissioners had been appointed who had reported giving to her the half of the land in controversy; that long after said judgment had become dormant appellants had procured an execution for costs and attempted to sell the said land and obtained a deed from the sheriff of Bexar County, and were claiming the land by virtue of said sale. Appellees prayed for the cancellation of said deed. The cause was tried by the court and judgment was rendered in favor of appellees. Appellants do not set up any claim to the land in this court through the deed mentioned in the answer of appellees.

We adopt the following conclusions of fact made by the trial court:

"1. John W. Kinney and Eliza A. Kinney were the common source of title.

"2. Albert Haeberle and Julia Haeberle were husband and wife ever

since 1867, and lived together as such up to the year 1890; and during their marriage acquired, by deed executed by John W. Kinney and Eliza Kinney unto Albert Haeberle, in 1890, six acres of land in Bexar County, which constituted community property of said Haeberle, and the east half of which is the land in controversy. There was a house on the land, which land and house was occupied by them as, and constituted, their homestead until they separated in 1890, when they removed from Bexar County to Guadalupe County, and have resided beyond the limits of Bexar County ever since said separation of 1890, and abandoned their said homestead.

"3. In December, 1892, Mrs. Julia Haeberle brought suit for divorce in the District Court of Guadalupe County against Albert Haeberle for alleged cruel treatment, and also sued for said six acres of land, claiming the same as her separate property, and also prayed for custody of the children.

"4. Albert Haeberle was duly cited in the same month, and on May 6, 1893, said District Court rendered judgment in said suit granting the divorce prayed for, giving the custody of the children to her, and vesting a one-half undivided interest of the six acres in her and the other half in the husband, and adjudging all costs of the divorce proceedings against Albert Haeberle, and appointing three commissioners to make partition of said land.

"5. At a subsequent term the commissioners were removed, and others appointed, who filed their report on November 1, 1895.

"6. At the November term, 1895, the report of commissioners of partition was confirmed by decree of said District Court, allotting to and vesting in Julia Haeberle the property in controversy, and unto Albert Haeberle the other portion, and adjudging to each one-half of the costs of the partition proceedings; which report of the commissioners with the decree of partition was recorded in Bexar County on the 1st day of February, 1898, at the instance of plaintiff.

"7. No execution was ever issued on said judgment, either for costs or any other purpose.

"8. On June 12, 1893, shortly after the divorce was granted, execution was issued from the Justice Court on a judgment nearly ten years old, but not dormant, for $106.56, said judgment being in favor of Wilkens against Albert Haeberle, and rendered during his marital life with Julia, said judgment having been kept alive by issuance of execution.

"9. The constable levied upon the six acres, on June 12, 1892, and on July 4, 1893, sold the same at public sale to Jay Minter, who was the attorney of Wilkins, for $50.

"10. At the time of sale under the Wilkins judgment the six acres were worth $4000.

"11. At the time of sale Minter had actual knowledge of the divorce, and of Mrs. Haeberle's interest in the property, and recognized her half interest therein. The constable executed a deed to Minter the same day

purporting to convey all the right, title, and interest of the said Albert Haeberle in the six acres which he may have had at the time of levy.

"12.  This deed was filed and recorded the next day, July 5, 1893.

"13.  The next day, July 6, 1893, Albert Haeberle executed unto Jay Minter a deed purporting to convey unto him the same six acres for a consideration of $1600, $1100 of which Minter paid in cash, and $500 by a promissory note executed by Minter unto Haeberle, and due six months thereafter, which note was secured by a vendor's lien expressly retained by Albert Haeberle in the deed last aforesaid.

"14.  On July 14, 1893, the decree of divorce was filed and recorded in the county clerk's office of Bexar County.

"15.  In February, 1894, Haeberle negotiated said vendor's lien note for value unto plaintiff Mary F. Campbell.  That Attorney Bergstrom, in the sale of said note to plaintiff, was not acting as her agent.  Before plaintiff Campbell purchased the note there was indorsed upon the back of said note an extension of one year.

"16.  In 1896 Mrs. Campbell brought suit in the District Court for the Forty-fifth judicial district of Bexar County against Minter on said note, and for foreclosure of said vendor's lien on said six acres, and recovered judgment in her own separate right on June 10, 1896.  Accordingly, and thereafter, an order of sale was issued under said judgment, and by virtue thereof the sheriff made sale of said six acres, on October 6, 1896, and the same was bid in by plaintiff Mary F. Campbell, and the sheriff made a deed to her purporting to convey all the estate, right, title, and interest that the said Minter had on July 6, 1893.

"17.  In December, 1897, and ever since, Judge W. W. King has been the attorney of plaintiff Mary F. Campbell, and as such he procured from the clerk of Gaudalupe County a bill of costs containing all items of costs incurred in the divorce proceedings and in the partition proceedings, and also an item of $1.75 incurred by said plaintiff Campbell in said month of December, for copy of partition decree.

"19.  Neither the clerk nor the sheriff nor anyone else ever made demand of said Julia Haeberle for the payment of such costs, or any part thereof.

"20.  Judge King placed said bill of costs in the hands of the sheriff of Bexar County, who made a levy, by virtue thereof, on the interest of Mrs. Julia Haeberle in the land in controversy, and sold the same at public sale on February 1, 1898, unto Mary F. Campbell for the sum of $20. Whereupon the sheriff made a deed unto Mary F. Campbell purporting to convey unto her all the estate, right, title, and interest that the said Julia Haeberle had on the 4th day of November, 1895, or at any time afterwards.

"21.  After the sale on February 9, 1898, before the sheriff made his return, said Julia Haeberle appeared in the district clerk's office of Guadalupe County and paid all costs that she was liable for under said judgments.

"22.  Thereafter the sheriff of Bexar County made his return, and

after deducting $5.20 for his fees, sent the balance of $14.80 to the district clerk of Guadalupe County, who promptly returned the same to the sheriff of Bexar County.

"23. Julia Haeberle, now Antis, was married to her codefendant, Adolph Antis, on July 4, 1893.

"24. On July 1, 1893, Julia Haeberle conveyed to J. B. Dibrell and Emil Mosheim an undivided one-eighth interest in said six acres of land, which undivided interest was thereafter, on July 19, 1893, conveyed by said Dibrell and Mosheim to Adolph Antis.

"25. That the plaintiff, Mary F. Campbell, had constructive but not actual notice of the judgment recorded in Bexar County, on July 14, 1893, giving to Julia Haeberle (now Antis) the land in controversy; and that she likewise acquired her interest pending the partition proceeding in the divorce suit in Guadalupe County. At the time plaintiff purchased the note she had no actual notice of any claim to the land by Julia Haeberle or Adolph Antis.

"26. At the time of the levy and sale under the Wilkins judgment the property in controversy had been abandoned by Julia and Albert Haeberle as their homestead, and they had ceased to use the same as their homestead.

"27. The plaintiff went into possession of the property in controversy at the date of her purchase under the foreclosure sale against Minter, and remained in possession, by tenant, until two or three days before the institution of the suit, when Julia Haeberle placed a tent upon the property and moved therein, whereupon plaintiff sued out a writ of sequestration."

The first assignment of error complains of the action of the court in admitting in evidence deeds from Julia Haeberle to Dibrell and Mosheim and from the latter to Adolph Antis, conveying a part of the property in controversy, the ground of complaint being that appellees had specially pleaded their title, and said deeds were no part of the title pleaded by them, and were therefore inadmissible. The answer of appellees did not specially plead their title. There was a plea of not guilty, followed by a cross-action setting up fraud in appellant in obtaining a deed to the land through an execution under a dormant judgment, and the facts pleaded in regard to the divorce and partition of the land was not a special plea of title, but mere matters of inducement leading up to the plea of fraud. The cross-action did not affect the vitality of the plea of not guilty. Mexia v. Lewis, 12 Texas Civ. App., 102.

It is contended in the second assignment that it was error to admit in evidence a decree of the District Court of Guadalupe County rendered in a divorce suit between Julia Haeberle (now Antis) and Albert Haeberle awarding each party an undivided one-half interest in six acres of land, which judgment was recorded in Bexar County on July 14, 1893, because said judgment was recorded before commissioners appointed to partition the land had reported and had their report confirmed. It is provided in article 4649, Revised Statutes, that "every partition of any tract of land or lot, made under any order or decree of any court and

every judgment or decree by which the title of any tract of land or lot is recovered, shall be duly recorded in the clerk's office of the county court in which such tract of land or lot or part thereof may lie, and until so recorded, such partition, judgment, or decree shall not be received in evidence in support of any right claimed by virtue thereof." If the judgment did not partition the land, it was still a "judgment or decree" of a court "by which the title to land was recovered," and being duly recorded was by the terms of the statute admissible for that reason.

Jay Minter, through whom appellant claimed title, was permitted to testify that at the time he purchased the land he had notice that Julia Haeberle had title to one-half of it, and objection is urged to the testimony on the ground that Minter should not have been allowed to impeach his title after having parted with the title to it. Mrs. Campbell claimed the land through Minter, and if he had been a bona fide purchaser of the land, without notice, his good faith would have inured to her benefit, and it was therefore admissible to show by Minter that he had actual notice of the title of Mrs. Haeberle when he acquired title. If the testimony was improperly admitted, it was not injurious, for the reason that the same facts were testified to by Dibrell. The testimony of Minter did not tend to impeach any title conveyed by him, the title he had being the interest that Albert Haeberle had in the six acres of land, and being the only title conveyed to appellant.

Jay Minter testified that the six acres of land was originally worth $4000, and afterwards $3500, and was allowed to state over the objection of appellant, that he had been offered $4000 for the land. Appellant does not attempt to show how the evidence was injurious to her cause, if not admissible, and we fail to see how it could have affected the judgment of the court.

The judgment of the District Court of Guadalupe County was duly recorded when Mrs. Campbell purchased the note executed by Minter, and it put her upon notice that Mrs. Haeberle was the owner of an undivided one-half interest in the six acres of land, and that commissioners had been appointed to divide the land. It does not matter that the judgment was not recorded when Minter bought from Albert Haeberle, for the reason that Minter had actual notice of the claim of Mrs. Haeberle at the time he bought, and she can not claim through his bona fides, but her title must rest upon the fact that when she bought the note she had no notice of the claim of Mrs. Haeberle. In the fifth assignment it is claimed that the judgment in this case is erroneous, because appellant deraigned title through a judgment for which the community estate of Albert and Julia Haeberle was liable, and that the partition could not affect that liability. Appellant did not deraign title through the execution sale made under the judgment against Albert Haeberle, but claimed the land through the foreclosure of a vendor's lien that was given by Minter to Haeberle. Minter, after buying at the execution sale, bought the land from Haeberle knowing that he owned only one-half of it, and gave him the note, afterwards bought by appellant, for the purchase

money.   When appellant bought that note she occupied the same position occupied by Albert Haeberle.   If he had sought a foreclosure of the lien held by him, it could have been only on the interest owned by him in the land when he sold and Minter could not have avoided the effect of the lien by showing that he had bought the land at execution sale.   In other words, under the facts of this case, the matter should be viewed as though no execution sale had ever taken place, because appellant does not and can not possibly deraign title through that sale, but must get it through a sale made by a man whose title is antagonistic to the execution sale. In order for appellant to have occupied a different and more impregnable position than that occupied by the payee in the vendor's lien note, she must have become the owner of the note before maturity, for a valuable consideration and without notice of the claim of Mrs. Haeberle.   But we have seen that she did have notice of the claim and must therefore occupy the position of the husband who undertook to sell and retain a lien on property which had been decreed to belong to his divorced wife.

There is no error in the judgment and it is affirmed.

*Affirmed.*

### ON MOTION FOR REHEARING.

Minter testified that at the time he bought the land he knew that Mrs. Haeberle owned one-half the land, that he knew of the partition and participated in it, and that the partition had been made at his suggestion. He did not intend to buy the interest of Mrs. Haeberle, and in his deed from the sheriff only the interest of the husband was conveyed.   It does not matter that the land set apart in the partition may have been liable for the debt; it was not bought by Minter.   The execution was levied after the partition.   It does not enlarge the claim of appellants, if the interest bought by Minter at execution sale is tacked to that obtained through Haeberle, because the interests are identical.   There is not the semblance of a conflict between the opinion in this case and that in the case of Grandjean v. Runke, 39 Southwestern Reporter, 945, as in the latter opinion, we hold that the whole of the community property was liable for community debts, but that doctrine does not prevent a judgment creditor from selling the interest of the husband and not that of the wife.   The only one who would have any ground of objection to such proceeding would be the husband.   In this case Wilkins, the judgment creditor, through his attorney Jay Minter, chose to sell only the interest of Haeberle in the land and not the interest of his divorced wife, and obtained title through the execution sale to Haeberle's interest alone.   Those claiming through Minter can claim no more than he obtained at the execution sale.   The motion for rehearing will be overruled.

*Overruled.*

Writ of error refused.